# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2012

## STATE OF TENNESSEE v. WILLIAM CARTER KING

**Direct Appeal from the Criminal Court for Fentress County**
**Nos. 9536, 10-108      E. Shayne Sexton, Judge**

---

**No. M2011-02561-CCA-R3-CD - Filed March 20, 2013**

---

The appellant, William Carter King, appeals the Fentress County Criminal Court's revoking the alternative sentences he received for guilty pleas to possession of a controlled substance in a penal institution, a Class C felony; burglary, a Class D felony; and theft of property valued more than five hundred dollars but less than one thousand dollars, a Class E felony. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Thomas Harding Potter, Jamestown, Tennessee, for the appellant, William Carter King.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshay Dulany, Assistant Attorney General; William Paul Phillips, District Attorney General; and John W. Galloway, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I. Factual Background

On July 9, 2009, the appellant pled guilty in case number 9536 to burglary, a Class D felony, and theft of property valued more than five hundred dollars but less than one thousand dollars, a Class E felony. He received consecutive six- and one-year sentences, respectively, to be served as one year in confinement followed by six years of supervised probation. Upon the appellant's release from confinement, he was to enter and complete a long-term drug rehabilitation program. On January 24, 2011, the appellant pled guilty in case number 10-108 to possession of a controlled substance in a penal institution, a Class C

felony, and received a five-year sentence to be served in community corrections and consecutively to the sentences he received in case number 9536. An order in the record states that as part of his effective twelve-year sentence, the appellant was to complete a drug treatment program at Faith Farm in Florida. That same day, January 24, the State filed a Petition to Revoke Probation and Suspended Sentence in case number 9536, alleging that the appellant had violated his probation by being charged with possession of a controlled substance in a penal institution. The appellant entered Faith Farm for treatment in February 2011. On May 16, 2011, his community corrections officer filed a Petition for Violation of Community Corrections, alleging that the appellant had been dismissed from Faith Farm for dealing Oxycodone pills and falsifying a drug test.

At the revocation hearing, Richard Moggett testified for the State that he was the Assistant Director at Faith Farm Ministries in Fort Lauderdale, Florida.[1] He explained that Faith Farm was a sixty-year-old "faith based" drug and alcohol regeneration program and that he was responsible for disciplinary actions and overseeing drug testing. The appellant enrolled in the program in February 2011. Moggett said that during the appellant's stay, the appellant had "some medical issues" and was granted "passes" to go to a hospital in the area. Moggett said that the appellant was "progressing well, but every so often, we would hear his name come to us in association with some other behavior." After the appellant's last visit to the hospital, he exhibited unusual behavior. Moggett asked the appellant if he had received medication at the hospital, and the appellant said he had received a shot of Morphine. Due to the appellant's odd behavior, the appellant was tested for drugs. The appellant tested positive for Morphine and Oxycodone. Although the appellant had not said he received Oxycodone at the hospital, Moggett decided to let the appellant remain at Faith Farm because "we could not find out if he had actually been given Oxycodone at the hospital." Four days later, the appellant was given another drug test. Moggett said that the urine sample the appellant submitted for the test was "off color, dark brown, very hot to the touch. In fact, the temperature was at 102 degrees." The appellant was asked to leave the program, and he did so immediately. Moggett notified the appellant's probation officer that the appellant had been dismissed from Faith Farm.

On cross-examination, Moggett testified that the appellant's behavior during his stay at Faith Farm was "[p]retty normal behavior for a student in our program." The appellant had written on his application that he had stomach problems, and doctors had prescribed Prilosec. Due to the appellant's condition, he would have been allowed to go to the doctor at least once per month. Moggett said that the appellant was allowed to go more often than once per month because his condition "was such a problem for him." The program at Faith

---

[1]According to the transcript, Moggett testified that he was the "Assistance" Director at Faith Farm. However, it is clear from his later testimony that he was the "Assistant" director.

Farm was a nine-month program, but the appellant stayed only four months. He went to the hospital at least six times during his stay. Moggett said that when the appellant returned from his last visit to the hospital, the appellant was acting "[k]ind of lethargic, distracted." Moggett said he sensed that something was "out of the ordinary" for the appellant. Moggett said he had been the Assistant Director of Faith Farm for four years, had no education in drug rehabilitation, and was basing his intuition about the appellant from his experience and eleven years of on-the-job training.

Moggett testified that the drug test kits used by Faith Farm were the same ones used by the criminal justice system in that area. After a person gave a urine sample for a test, the collector placed a security tab over the top of the collection bottle, and the testee initialed it. The results of the test were read within five minutes. A temperature strip on the bottle determined the urine's temperature. Moggett said that Faith Farm usually tried to have an employee witness a testee give a urine sample and that "[w]e have on occasion found devices that they attach to the thigh that would give a sample. They would actually run a tube alongside of their genitals and use that." He explained, "Any invalidation of that test, we presume it is . . . on purpose and so, we dismiss." The appellant's second test was negative for drugs, but the color and high temperature of his urine invalidated the test and resulted in his dismissal from the program. The appellant was not given prior notice of the test, and he was not checked for a device attached to his thigh after the test. Moggett acknowledged that he had no explanation for the urine's dark color and high temperature.

Candace Norman testified that she was the appellant's community corrections officer and began supervising him on January 24, 2011. Norman said that she arranged for him to go to Faith Farm and that "I truly believe in their program." Norman had never known Faith Farm to dismiss someone from the program inappropriately. On May 14, 2011, she received a letter informing her that the appellant had been dismissed from the program. The appellant also telephoned Norman and informed her that he had been discharged. Norman filed the Petition for Violation of Community Corrections and told the appellant that he needed to return to Fentress County. The appellant did not return to Fentress County voluntarily.

The trial court determined that the State had established a probation violation by a preponderance of the evidence. Specifically, the trial court stated,

> The protocol in taking this - what was characterized as old urine
> was established by the witness. The language itself speaks [that]
> the client falsified. I think [defense counsel] takes exception to
> that because there is no showing that he actually rendered the
> test, that he received it from someone else or if he had -- had it
> put up. The fact of the matter is that the Faith Farms has

-3-

established that there was a drug test that could not be tested. In particular, when you're -- the witness testified that the urine has a temperature of 102 which is virtually impossible unless the submitting person was running extended fever. I mean, just -- it's just impossible.

The court noted that the appellant had been in various rehabilitation programs over the years and stated that there was "nothing else to do." The trial court ordered that the appellant serve his alternative sentences in confinement.

## II. Analysis

The appellant contends that the State failed to comply with Tennessee Code Annotated section 40-35-311(c)(1) because the State failed to introduce into evidence the laboratory report for his drug test. The appellant also contends that the trial court abused its discretion by revoking his alternative sentences because Richard Moggett was not the laboratory technician who collected and analyzed the urine sample, and, therefore, the State failed to provide substantive evidence to support the trial court's finding that the appellant falsified the drug test. The State argues that Tennessee Code Annotated section 40-35-311(c)(1) does not apply in this case because the State did not seek to introduce the laboratory test results and that the trial court did not abuse its discretion by revoking the appellant's alternative sentences. We conclude that the appellant is not entitled to relief.

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). This court's review of a trial court's community corrections revocation is similar to our review of a trial court's probation revocation. State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010). Upon revoking probation, a trial court has the authority to order the appellant to serve the original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

As noted by the State, the appellant did not raise an issue regarding the State's failure to comply with Tennessee Code Annotated section 40-35-311(c)(1) before the trial court.

"Ordinarily, issues raised for the first time on appeal are waived." State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). In any event, section 40-35-311(c)(1) sets out the requirements the State must follow in order to introduce a laboratory report regarding a drug test if the lab technician who performed the test is not called to testify at the probation revocation hearing. In this case, the State did not seek to admit the laboratory report because Faith Farm determined that the color and temperature of the urine invalidated the test. Therefore, we agree with the State that section 40-35-311(c)(1) was not applicable.

We also agree that the trial court did not abuse its discretion by concluding that the appellant's alternative sentences should be revoked. Richard Moggett testified that the appellant's urine was brown and hot, which invalidated the test. Moggett could not offer an explanation for the urine's color and temperature but suggested that the appellant had submitted a falsified sample. He also stated that Faith Farm's policy was to presume that an invalid test was "on purpose and so, we dismiss." The trial court concluded that the appellant had falsified the test, and we cannot say that the trial court abused its discretion. Therefore, the trial court's revocation of the appellant's alternative sentences is affirmed.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE